# In the United States Court of Federal Claims
No. 14-316L
(Filed: May 15, 2017)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| DAN MCCARTY, et al., | **Fifth Amendment Taking; Rails - to - Trails Act ; Attorney Fees; Discovery; Depositions of Opposing Counsel.** |
| Plaintiffs, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Mark F. Hearne, II, Lindsay S.C. Brinton, Meghan S. Largent, and Stephen S. Davis, Arent Fox LLP, 1717 K Street, NW, Washington, D.C. 20006, for Plaintiffs. Debra Albin-Riley, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013, for Plaintiffs.

John C. Cruden and David A. Harrington, U.S. Department of Justice, Environment & Natural Resources Division, Natural Resources Section, 601 D Street, NW, Room 3020, Washington, D.C. 20004.

---

**MEMORANDUM OPINION AND ORDER**

---

**WILLIAMS,** Judge.

This matter comes before the Court in an unusual posture - - on Defendant's post-settlement motion for leave to take depositions of opposing counsel, two attorneys and a paralegal from the law firm of Arent Fox, LLP, in conjunction with Plaintiffs' motion for attorney fees and litigation expenses.[1] Defendant seeks this highly unusual discovery to establish that Plaintiffs' fees should be based on a St. Louis, Missouri locality rate, rather than the District of Columbia forum rate. Plaintiffs oppose this motion arguing that the unusual tack of deposing opposing counsel is unwarranted.

---

[1] Plaintiffs, 67 Indiana landowners, settled their Fifth Amendment taking claims against Defendant, with respect to compensation for land and interest, with the understanding that attorney fees and litigation expenses would be determined at a later date. ECF No. 125.

For the reasons stated below, Defendant's motion is denied.

## Background

On December 1, 2016, Defendant served a request for the production of Plaintiffs' retention agreements, billing records, invoices, and payment or reimbursement records. In response, Plaintiffs represented that they had previously produced all responsive documents, but had no documents "reflecting any payment made by a plaintiff in this action." Def.'s Resp. to Court Order Ex. B at 4.

Defendant also served one interrogatory, requesting that Plaintiffs identify all Trails Act taking actions "in which a client of Arent Fox has actually paid Arent Fox at hourly rates sought in Landowners' Motion for Attorney Fees and Expenses under the Uniform Relocation Act and Local Rule 54(d), ECF No. 111." Id. Ex. A at 4. Plaintiffs objected to this interrogatory on four grounds - - 1) Arent Fox and its clients in past Trails Act cases are not "parties" to this litigation; 2) the information sought by the Government constituted attorney-work product and attorney-client communication involving individuals unrelated to this litigation; 3) the interrogatory was "poorly and confusingly written;" and 4) the interrogatory seeks information of limited probative value. Nonetheless, after asserting these objections, Plaintiffs stated the following:

> 193 landowners in past Trails Act litigation during the years 2013-2014 have paid Arent Fox an attorney fee equal to or greater than Arent Fox's then-effective usual and customary hourly rate for complex federal litigation. These fees were paid [by] the Arent Fox clients in the following Trails Act lawsuits[:] Rogers v. Uinted States, No. 07-273, Bird Bay v. United States, No. 07-426, Bay Plaza, No. 08-198, McCann v. United States, No. 07-4261, Childers v. United States, No. 07-4262, Breda v. United States, No. 10-187, and Murphy v. United States, No. 10-200, Ingram v. United States, No. 10-463 and Bishop v. United States, No. 10-594.

Id. Ex. B, at 4.

Deeming Plaintiffs' response to the interrogatory insufficient, Defendant requested that Plaintiffs provide a "corrected, supplemental answer." Def.'s Mot. 2, Ex. B. After Plaintiffs informed Defendant that they had fully responded to its interrogatory, Defendant informed Plaintiffs that, rather than briefing a motion to compel, it would seek this information through deposition discovery, which it considered a more efficient approach. Id. at 3, Ex. C.

Defendant subsequently filed the instant motion for leave to depose opposing counsel. This motion was fully briefed on April 3, 2017.

## Discussion

Plaintiffs seek total fees of $1,395,134 for a Rails-to-Trails taking class action litigation with 67 plaintiffs in Indiana that spanned three years and ultimately settled. Defendant contends that the locality exception to the forum rule should be applied in setting the attorney fee rate here and seeks depositions of opposing counsel to ascertain where the bulk of counsel's work was performed.

The general rule in attorneys' fees cases is that the prevailing market rate is the forum rate. See Avera v. Sec. of Health and Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008) ("[T]he

2

courts of appeals have uniformly concluded that in general, forum rates should be used to calculate attorneys' fee awards under other fee-shifting statutes."); see also Donnell v. United States, 682 F.2d 240, 251 (D.C. Cir. 1982) ("We . . . hold that the proper rule is that the relevant community is the one in which the district court sits.").

The rationale for the forum rule is that it promotes objectivity and efficiency. In terms of objectivity, the forum rule:

> is a neutral rule which will not work to any clear advantage for either those seeking attorneys' fees or those paying them. High-priced attorneys coming into a jurisdiction in which market rates are lower will have to accept lower rates for litigation performed there. Similarly, some attorneys may receive fees based on rates higher than they command if those higher rates are the norm for the jurisdiction in which the suit was litigated.

Id. at 251-52. In terms of administrative ease, the forum rule "requires the district court normally to determine only the prevailing market rate within its jurisdiction, an inquiry about which it should develop expertise." Id. at 251. Under the forum rule, some attorneys will be undercompensated, and some will be overcompensated, but the benefits of objectivity and efficiency outweigh this. Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 759 (D.C. Cir. 1999) (internal citation omitted).

In Davis County, the United States Court of Appeals for the D.C. Circuit established a narrow exception to the forum rule applying the locality rate where "the bulk of the work is done outside the jurisdiction of the court and there is a very significant difference in compensation" between the locality and the forum. Id. at 758, 760 (emphasis in original) (finding that awarding higher D.C. rates would "produce windfalls inconsistent with Congressional intent").

The Federal Circuit in Avera determined that the Davis County exception to the forum rate represented "a sound approach to setting the reasonable rate of attorneys' fees in Vaccine Act cases in which the bulk of the work is done outside of the District of Columbia in a legal market where the prevailing attorneys' rates are substantially lower." 515 F.3d at 1349 (concluding that it was appropriate to apply locality rates as opposed to the forum rate where counsel performed "all of their work from their law office in Cheyenne, Wyoming" and it was clear that the market rate prevailing in the District of Columbia was significantly higher than the market rate in Cheyenne) (emphasis in original). In Avera, Defendant urged the Court to adopt a "hometown rule" in Vaccine Act cases, applying the market rate of the geographic location where the attorney is based. Id. at 1348-49. Appellants, on the other hand, argued that forum rates should be applied "without exception." Id. at 1349. The Avera Court rejected both parties' arguments stating that there was "no reason to depart from the general rule" that a court should apply a forum rate in Vaccine Act cases unless, as in Avera, the "limited exception" to the forum rule was warranted because the attorneys performed "virtually all their work" in a "much less expensive legal market." Id. at 1349-50 (citing Davis Cty., 169 F.3d at 760).

In seeking to depose opposing counsel, Defendant assumes without demonstrating, that, as required to apply the Davis County exception, there is a "very significant difference" between the locality rates and forum rates. Indeed, Defendant asserts that the disparity here is "without question 'very significant.'" Def.'s Mot. 5. This Court has made no such finding, and the record

3

at this stage of the proceedings does not support Defendant's certainty about this alleged "very significant" difference.

In concluding that there is a significant disparity between D.C. and St. Louis rates, Defendant provides the following comparison of the rates Plaintiffs seek in this Rails-to-Trails litigation with the rates charged by a St. Louis area firm in a 2010 Rails-to-Trails case:

|            | Rates Plaintiffs seek/per hour | Established Rates of St. Louis Based Counsel in 2010 Trails Act case/per hour |
|------------|-------------------------------|-------------------------------------------------------------------------------|
| Partner    | > $800                        | $375                                                                          |
| Of Counsel | $550                          | $350                                                                          |
| Associate  | $490                          | $225-275                                                                      |
| Paralegal  | $210-355                      | $150                                                                          |

Def.'s Mot. 4, Ex. D. Defendant solely relies upon the rates Plaintiffs seek in this action to establish the forum rate - - it does not cite any other information suggesting what a reasonable forum rate would be. With respect to St. Louis rates, in addition to the 2010 Trails Act case referenced above, Defendant cites an annual survey of average St. Louis rates and recent federal civil rights cases litigated in the Eastern District of Missouri, to conclude that a reasonable St. Louis rate would range from between $375 to $459 per hour for partners, and $225 to $275 per hour for associates. Id. Ex. D; Def.'s Suppl. Br. 2-3, Ex. 1.

Plaintiffs submitted the following evidence to show that there is no substantial difference between St. Louis rates and D.C. rates. Plaintiffs' counsel's Chief Financial Officer testified that Arent Fox's rates are "approximately 15% lower for an associate in St. Louis compared to a similarly experienced associate in Los Angeles, New York or Washington, D.C." Munno Decl. ¶ 3. Plaintiffs also cite the Government's cost of living adjustment worksheet which shows that the Government adjusts the salary for its lawyers who live in St. Louis upward by 14.49% and the salary of its D.C. lawyers upward by a little over 10% more - - 24.78%. Pls.' Suppl. Br. Ex. D. Finally, Plaintiffs rely upon the declaration of Catherine Hanaway, a partner at Husch Blackwell and the former United States Attorney for the Eastern District of Missouri. Ms. Hanaway testified that, assuming the current rates for complex federal litigation in Washington, DC are $826 per hour for a senior partner and $343 for a first-year associate, the rates a St. Louis-based firm with resources comparable to Arent Fox would charge on comparable complex federal litigation against the United States by attorneys possessing comparable experience would not be substantially less than these rates. Hanaway Decl. ¶ 11, Campbell v. United States, No. 13-324L.

Based upon this record, Defendant has not made a sufficient showing that there is a "very significant difference" between reasonable St. Louis rates and the forum rate, so as to warrant the radical discovery of deposing opposing counsel. Discovery related to a motion for attorney fees "should be rare, and requires court approval." Whispell Foreign Cars, Inc. v. United States, No. 09-315L, 2016 WL 6875972, at *2 (Fed. Cl. Nov. 22, 2016) (internal citation omitted). "A request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). To permit a deposition of counsel in a context where any discovery "should be

rare," to ascertain facts supporting using the Davis County locality-rate exception to the forum rule when this exception may not even apply, would not comport with the requirements of Rule 26. See RCFC 26(b)(1).

Defendant cites a single case, Energy Capital Corp. v. United States, 60 Fed. Cl. 315 (2004), to support authorizing the depositions of opposing counsel in relation to the award of attorney fees. Def.'s Reply 6. However, Energy Capital is readily distinguishable from the case at hand. In Energy Capital, the Court permitted the plaintiff to take the video deposition of the General Counsel of the Department of Housing and Urban Development in support of its Equal Access to Justice Act application, stemming from the termination of the plaintiff's contract and the allegation that this counsel had "threatened to file a false pleading that would 'falsely raise the specter of a criminal investigation.'" 60 Fed. Cl. at 316. The deposition was authorized in Energy Capital because the conduct of counsel was at issue and relevant to whether the Government had litigated in bad faith. Id. at 316, 319. Here, no conduct of counsel relevant to a merits decision is implicated - - this dispute involves what should be an unremarkable determination of appropriate fee rates.

As Plaintiffs point out, the circumstances in which the depositions of opposing counsel are permitted are few and far between. The Court of Federal Claims has held that deposing opposing counsel would only be appropriate if 1) no other means exist to obtain the information than to depose counsel; 2) the information sought is relevant and non-privileged; and 3) the information is crucial to the preparation of the opposing party's case. Sparton Corp. v. United States, 44 Fed. Cl. 557, 563 (1999) (citing Shelton v. Am. Motors Corp., 805 F.3d 1323, 1327 (8th Cir. 1986)).

Defendant has not, at this juncture, established a sufficient factual predicate that there is a "very significant" difference between the locality rate and the forum rate, to suggest that the Davis County exception might apply. Economic considerations counsel against authorizing the requested depositions at this stage of the case. The cost of deposing opposing counsel would ultimately be borne by the taxpayer as Plaintiffs may be reimbursed for fees associated with litigating their fee petition. See 42 U.S.C. § 4654(c) (2012) ("The court rendering a judgment for the plaintiff in a proceeding brought under section . . . 1491 of Title 28, awarding compensation for the taking of property by a Federal agency, or the Attorney General effecting a settlement of any such proceeding, shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will in the opinion of the court or the Attorney General reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding."); Gregory v. United States, 110 Fed. Cl. 400, 407 (2013).

In the interest of economy and efficiency, the Court will first determine whether there is a significant disparity between St. Louis and D.C. rates, and then, if this requirement of the Davis County exception is met, permit Defendant to conduct limited discovery on the location of Plaintiffs' legal work. As such, prior to authorizing any discovery on the fee application, the Court orders the parties to complete their factual record and briefing on the extent of the disparity between St. Louis and D.C. rates.

In the event that this Court determines that there is a "very significant" disparity between the forum rate and St. Louis rates, such that the Davis County exception to the forum rule may apply, then Defendant may seek leave to pursue limited tailored discovery (not depositions of

opposing counsel) on the location of counsel's work.  Information on where the bulk of the work in this matter was performed should be able to be gleaned through less burdensome means of discovery, such as interrogatories, requests for admission, and requests for production of documents.

## Conclusion

Defendant's motion for leave to take discovery is **DENIED.**

The parties shall file supplemental briefs on the extent of the disparity between D.C. and St. Louis rates by **June 16, 2017**.[2]  In their supplemental briefs, the parties shall address which matrix the Court should use in calculating D.C. rates.

 s/Mary Ellen Coster Williams  
**MARY ELLEN COSTER WILLIAMS**  
**Judge**

---

[2]  The deadline for the filing of Defendant's response to Plaintiffs' motion for attorney fees was stayed to permit the parties to engage in discovery and explore settlement.  This deadline remains stayed pending further order of the Court.