# In the United States Court of Federal Claims

No. 14-316L
(Filed: April 9, 2019)[1]

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * | | Fifth Amendment Takings; National Trails System Act; 16 U.S.C. § 1247(d); Uniform Relocation Assistance and Real Property Acquisition Policies Act; 42 U.S.C. § 4654(c); Attorneys' Fees; Forum Rate; Locality Rate; Rate Adjustment Matrices; U.S. Attorney's Office Matrix; Kavanaugh Matrix; Reasonable Hourly Rate; Block Billing; Vague Billing Entries; Fees on Fees. |
| DAN MCCARTY, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| THE UNITED STATES, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * | | |

Mark F. Hearne, II, Lindsay S.C. Brinton, Meghan S. Largent, Stephen S. Davis, and Abram J. Pafford, Arent Fox LLP, 1717 K Street, NW, Washington, D.C. 20006, for Plaintiffs. Debra Albin-Riley, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013, for Plaintiffs.

Jean E. Williams, Jeffrey H. Wood, David A. Harrington, and Sarah Izfar, U.S. Department of Justice, Environment & Natural Resources Division, Natural Resources Section, 601 D Street, NW, Room 3020, Washington, D.C. 20004, for Defendant.

---

**OPINION AND ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES**

---

**WILLIAMS,** Senior Judge.

This rails-to-trails takings case comes before the Court on Plaintiffs' Motion for Attorneys' Fees and Expenses. For the reasons stated below, Plaintiffs' motion is granted in part.

## Background

Plaintiffs, 66 landowners, settled the merits of their Fifth Amendment taking claims for $957,273 including interest. Plaintiffs request fees of $2,092,464 and expenses of $232,994. Plaintiffs' counsel, Arent Fox LLP ("Arent Fox"), worked a total of 3,855.1 hours over the course

---

[1] The Court issued this opinion under seal on March 8, 2019, and directed the parties to file proposed redactions by March 22, 2019. Neither party has proposed redactions. Accordingly, the Court publishes this opinion.

of this litigation claiming hourly rates ranging from $285 for paralegals to $855 for their most senior partner. Pls.' Mot. Ex. 1; Def.'s Mot. Ex. B. Defendant contends that the hours claimed and fees requested are excessive and requests that the Court reduce both the billing rates and the number of hours to be reimbursed.

## Discussion

### Legal Standard

The Uniform Relocation Assistance and Real Property Acquisition Policies Act ("URA") provides in pertinent part:

> The court rendering a judgment for the plaintiff in a proceeding brought under section 1346(a)(2) or 1491 of Title 28, awarding compensation for the taking of property by a Federal agency, or the Attorney General effecting a settlement of any such proceeding, shall determine and award or allow to such plaintiff, as part of such judgment or settlement, such sum as will in the opinion of the court or the Attorney General reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding.

42 U.S.C. § 4654(c) (2012). A party seeking to recover under the URA must be a prevailing party. See Raymo v. Sec'y of Health & Human Servs., 129 Fed. Cl. 691, 701 (2016); Otay Mesa Prop., L.P. v. United States, 124 Fed. Cl. 141, 146 (2015) (finding that "a successful litigant in a Fifth Amendment takings case" is entitled to recovery of attorneys' fees pursuant to the URA). To determine an appropriate award for attorneys' fees, courts should determine: (1) the number of hours reasonably expended in the litigation; (2) the reasonable hourly rate; and (3) the relevant multiplier to be used. Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516, 1517 (D.C. Cir. 1988) (citing Blum v. Stenson, 465 U.S. 886, 891 (1984)).

### The Rate Calculation

#### Forum Rate

Plaintiffs ask the Court to award their counsel the forum rates - -Washington, D.C. rates - - while Defendant argues that the locality rates where Plaintiffs' counsel are based - - St. Louis, Missouri - - are proper. As the Federal Circuit recognized in the context of a Vaccine Act fee request, "the courts of appeals have uniformly concluded that in general, forum rates should be used to calculate attorneys' fee awards under other fee-shifting statutes." Avera v. Sec'y of Health & Human Servs., 515 F. 3d 1343, 1348 (Fed. Cir. 2008). The rationale for the forum rule is that it promotes neutrality, administrative ease, objectivity, and efficiency. See Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. United States, 169 F.3d 755, 759 (D.C. Cir. 1999) (citing Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 261 (1985)); Donnell v. United States, 682 F.2d 240, 251-52 (D.C. Cir. 1982). As the United States Court of Appeals for the District of Columbia Circuit explained, the forum rule:

> is a neutral rule which will not work to any clear advantage for either those seeking attorneys' fees or those paying them. High-priced attorneys coming into a jurisdiction in which market rates are lower will have to accept lower rates for

       litigation performed there. Similarly, some attorneys may receive fees based on rates higher than they normally command if those higher rates are the norm for the jurisdiction.

Donnell, 682 F.2d at 251-52. Under the forum rule, some attorneys will be undercompensated, and some will be overcompensated, but the benefits of objectivity and efficiency outweigh this eventuality. Davis County, 169 F.3d at 759 (citing Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. at 261).

       Defendant requests that this Court apply the locality-rule exception recognized in Davis County, to determine Plaintiffs' reimbursement rate here. In Davis County, the United States Court of Appeals for the District of Columbia Circuit set forth a narrow exception to the forum rate rule, applying the locality rate where: 1) the bulk of the work was done in the locality and 2) there was a "very significant difference" between the forum and locality rates. Id. at 758 (emphasis in original). In Davis County, the plaintiff was represented by a Salt Lake City firm, but sought District of Columbia rates which were approximately 70% higher than Salt Lake City rates. Additionally, "virtually all of the work was performed in Utah, the less expensive legal market," and "[t]he only time spent in Washington [D.C.] by Davis County's lawyers, as far as the record reflects, was for the purpose of examining the administrative docket and participating in a short oral argument." Id. at 760. The Court in Davis County therefore awarded the firm its "home" market rates rather than the forum rates, and stated that this exception would "prevent the occasional erratic result" where the successful petitioner was "vastly overcompensated." Id. at 758. The D.C. Circuit noted that its decision was a "limited exception" to the forum rule. Id. at 760.

       In Avera v. Secretary of Health and Human Services, the United States Court of Appeals for the Federal Circuit determined that the D.C. Circuit's decision in Davis County represented "a sound approach to setting reasonable attorneys' fees in Vaccine Act cases in which the bulk of the work is done outside of the District of Columbia in a legal market where the prevailing attorneys' rates are substantially lower." 515 F.3d at 1349. As in Davis County, the locality rate and forum rate in Avera were significantly different, and the bulk of the legal work was performed in the locality where the plaintiff's counsel was based. Id. The Federal Circuit in Avera invoked the Davis County exception and applied the lower "hometown" rate, preventing a result that "'would produce windfalls inconsistent with congressional intent.'" Id. at 1349-50 (quoting Davis County, 169 F.3d at 759-60).

       In this case, the takings were effected in Indiana, and legal work was performed there as well as in five other jurisdictions, and, in some instances, while counsel was in transit. See, e.g., Def.'s Opp'n Ex. 2, at 150-53. Plaintiffs' counsel, Arent Fox, is a national law firm, and Plaintiffs' lawyers and paralegals worked on this case in St. Louis, Washington, D.C., Los Angeles, New York, Louisville, and Bedford, Indiana. Pls.' Reply 10-11, Ex. 1, at 22-37; Def.'s Opp'n Ex. 2, at 1-79; Pls.' Not. Ex. 1, at 2-5 (Jan. 16, 2018). The highest number of hours expended in St. Louis were those of a paralegal, who billed approximately 32 percent of Plaintiffs' claimed hours, and some of this paralegal's work was done in Indiana, where the takings occurred.[2]

---

[2]    Specifically, paralegal Mary Shambro billed 1,210.4 out of a total of 3,855.1 claimed hours.

The performance of legal work by a national law firm in multiple states weighs in favor of applying a bright-line rule, like the forum rule, that promotes neutrality, objectivity, administrative ease, and efficiency. This case does not pose the risk of the "occasional erratic result" where a successful plaintiff's counsel practicing exclusively in a significantly lower-priced legal market would be "vastly overcompensated" by receiving the forum rate.

In urging this Court to apply the Davis County exception to the forum rule, Defendant assumes without demonstrating that there is a "very significant difference" between St. Louis rates and District of Columbia rates. Def.'s Mot. Disc. 5 (stating that the disparity here is "[w]ithout question . . . significant and substantial"). However, the record in this case does not support a finding that there is a "very significant difference" between Plaintiffs' counsel's rates in Washington, D.C. and their rates in St. Louis, Missouri.

Plaintiffs' counsel's chief financial officer testified in a declaration:

> Because Arent Fox offers services in several different legal markets, its usual and customary rates must reflect the market in which each attorney participates. As such, the firm attempts to offer rates that are consistent with market conditions in those locations where Arent Fox has offices. Accordingly, the rates for each Arent Fox attorney are not "one size fits all." They differ, for example, by geographic location. Because the St. Louis office is smaller and requires less overhead to maintain than Arent Fox's other offices, Arent Fox offers its associates in that office at a lower rate than its associates in larger offices. Nevertheless, those associates draw on the firm's fixed resources, which must be reflected in their rate. <u>The result is a rate approximately 15% lower for an associate in St. Louis compared to a similarly experienced associate in Los Angeles, New York or Washington, D.C.</u>

Munno Decl. ¶ 3 (Sept. 29, 2016) (emphasis added).

Plaintiffs also cite the Department of Justice locality pay table which shows that the Government adjusts the salary for its lawyers who live in St. Louis upward by 14.49% and the salary of its D.C. lawyers upward by 24.78% - - a difference of approximately 10.3%. Pls.' Suppl. Br. Ex. D. Finally, Plaintiffs rely on the declaration of Catherine Hanaway, the former United States Attorney for the Eastern District of Missouri and a partner in the St. Louis office of Husch Blackwell. See id. Ex. E. Ms. Hanaway testified that, assuming the current rates for complex federal litigation in Washington, D.C. "are between $826 per hour for a senior partner to $343 for a first-year associate," "the rates a St. Louis-based firm with resources comparable to Arent Fox would charge on comparable complex federal litigation against the United States by attorneys possessing comparable experience would not be substantially less than these rates." Hanaway Decl. ¶ 11.

Defendant suggests that for comparison purposes, the Court should look to the hourly rates charged by Baker Sterchi Cowden and Rice ("Baker Sterchi"), the St. Louis firm originally retained by four Plaintiffs. These rates range from $150 for a paralegal to $375 for a partner and are taken from Baker Sterchi's retention agreement signed between 2009 and 2010, by the plaintiffs in Greenwood v. United States. 131 Fed. Cl. 231, 239-40 (2017). The Greenwood Court awarded counsel the rates in the retention agreement for work performed in 2009-10, but awarded

4

the plaintiffs' counsel their requested hourly rates of $475 for partners, $275 for associates, and $250 to $175 for paralegals, for work performed from 2011, forward. Id. at 239.

In addition, Defendant relies on three other Rails-to-Trails cases, Missouri case law, and Missouri legal surveys to argue that the rates sought by Plaintiffs' counsel exceed average St. Louis rates by between 30 and 145% over the time period of this litigation. Defendant cites Greenwood v. United States, Biery v. United States, and Town of Grantwood Village v. United States, where counsel were awarded St. Louis rates. In Greenwood, the plaintiffs' firm, Stewart, Wald, McCulley, only asked for St. Louis rates. In Grantwood Village, the Court declined to grant the plaintiffs' counsel, who is also counsel here, national rates, as he was then working at the St. Louis office of a firm based in Kansas City, Lathrop & Gage. 55 Fed. Cl. 481, 487 (2003). In Biery, Plaintiffs' lead counsel here was awarded St. Louis rates for the first three years when he was at Lathrop & Gage, but was awarded Washington, D.C. rates when he moved to Arent Fox. Nos. 07-693L, 07-675L, 2014 WL 12540517, at *6 (Fed. Cl. Jan. 24, 2014), aff'd Biery v. United States, 818 F.3d 704 (Fed. Cir. 2016). The Court finds Biery the most pertinent of these authorities, as that case involved the same Plaintiffs' counsel and firm.

Defendant also cites seven cases in the Eastern District of Missouri, dating from 2013 and 2016, to support applying the Davis County exception to the forum rate. However, the Court does not find these cases persuasive as they were not Rails-to-Trails actions and did not entail legal work performed in multiple jurisdictions.[3] Nor is the Court persuaded by Defendant's citation of a 2016 survey of average St. Louis rates in recent federal civil rights cases in the Eastern District of Missouri published in Missouri Lawyers Weekly to establish St. Louis rates. Def.'s Suppl. Br. 2, Ex.1. None of the authorities cited by Defendant warrant the application of the Davis County exception to the forum rule here.

In sum, the record as a whole, in particular Plaintiffs' persuasive evidence that the disparity between their firm's D.C. rates and St. Louis rates is 15%, does not show that there is a "very significant difference" between St. Louis rates and the forum rate warranting application of the Davis County locality-rate exception. Cf. Avera, 515 F.3d at 1350 (finding the difference in rates to be significant where Washington, D.C. rates were three times higher than Cheyenne rates); Masias v. Sec'y of Health & Human Servs., 634 F.3d 1283, 1287-88 (Fed. Cir. 2011).

### **The Adjustment Matrix**

Adjustment matrices provide a schedule of billing rates based on an attorney's level of experience, adjusted for inflation, and are used to determine a reasonable hourly rate for attorneys engaged in federal litigation involving fee-shifting statutes. See Biery, 818 F.3d at 712-13. Defendant requests that the Court apply the United States Attorneys' Office ("USAO") adjustment matrix to the fee amount, while Plaintiff asks the Court to apply the Kavanaugh Matrix, a matrix

---

[3] These Missouri District Court cases involved a challenge to the constitutionality of a state law and a products liability claim, three civil rights claims brought pursuant to 42 U.S.C. § 1983, an insurance interpleader action, and a claim brought pursuant to the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq.

developed by their expert economist, Dr. Michael Kavanaugh.[4] Both the USAO Matrix and the Kavanaugh Matrix are used to determine billing rates in the Washington, D.C. legal market. See id. at 713-14. Each matrix adjusts rates to account for the passage of time by applying a price index that measures the change in billing rates. See Kavanaugh Decl. ¶ 12.

Because the Kavanaugh Matrix is based on the Legal Services Index of the Consumer Price Index ("CPI"), it captures only the market for legal services, not other consumer markets such as food, housing, and clothing. Biery, 818 F.3d at 713. The USAO Matrix, on the other hand, is based on "changes to the cost of living in the Washington D.C. metropolitan area as measured by the Consumer Price Index for All Urban Consumers ("CPI-U")," which "measures the average change in price of a market basket of goods and services including food, shelter, and medical and legal services . . . ." Id. (internal citations omitted).

Plaintiffs proposed the following comparison of their 2016-17 hourly billing rates using the Kavanaugh and USAO Matrices:

| Years of Experience | Kavanaugh | USAO |
|---|---|---|
| 20+ | $826 | $543-581 |
| 11-19 | $685 | $465-516 |
| 8-10 | $608 | $395 |
| 4-7 | $421 | $332-339 |
| 1-3 | $343 | $291-322 |
| Paralegal | $187 | $157 |

Pls.' Mot. Ex. 4, at 54.

In Biery, a Rails-to-Trails case involving the same plaintiffs' counsel in this case, the Federal Circuit declined "to exclusively endorse" either the Kavanaugh Matrix or the USAO Matrix. 818 F.3d at 714. The Biery Court awarded counsel the forum rate adjusted using the USAO Matrix for the two-year period counsel was with Arent Fox, and the fees ranged from $465 to $505 for attorneys with over 20 years' experience, $330 to $355 for attorneys with 8-10 years' experience, and $130 to $145 for paralegals. Biery, 2014 WL 12540517, at *7 & n.10. The trial court in Biery elected to use the USAO Matrix, based on two district court cases in which Arent Fox was awarded forum rates below the USAO Matrix. On appeal, the Federal Circuit found that the trial court's decision to adopt the USAO Matrix was within its discretion, and cautioned that "it would be an abuse of discretion for a court to blindly use either matrix without considering all the relevant facts and circumstances." Biery, 818 F.3d at 714. The Federal Circuit determined that the Biery trial court's finding that the fee rates awarded to Arent Fox in two district court cases

---

[4] Dr. Michael Kavanaugh, is an economist in private practice in Hawaii. He holds a Ph.D. in economics from the University of Cincinnati and a BA in economics from Xavier University. Dr. Kavanaugh has taught economics at the University of Cincinnati and at Northern Kentucky University, and has worked as an economist for government agencies, states, citizen groups, and private industry for over 40 years. Kavanaugh Decl. ¶¶ 1-2.

6

were lower than, "if not comparable" to, the USAO Matrix rates, supported the trial court's conclusion that the USAO Matrix was "sufficient to adequately compensate counsel." Id.

Upon considering the Kavanaugh Matrix and the USAO Matrix, this Court is persuaded that the USAO Matrix is more appropriate here, as that matrix is based on changes in prices for goods and services, including legal services in Washington, D.C. and the Court is applying that forum rate. In addition, in two District Court cases decided during this litigation, courts awarded Arent Fox fees consistent with the USAO matrix. In National Grange of the Order of Patrons of Husbandry v. California State Grange, a trademark infringement case, the United States District Court for the Eastern District of California awarded an Arent Fox attorney a rate of $550 per hour instead of the requested rate of $720 per hour for litigation in the Sacramento area. No. 2:14-676 WBS AC, 2016 WL 4765061, at *3-4 (E.D. Cal. Sept. 12, 2016). The Court found that application of the USAO Matrix yielded an award of $504 per hour to attorneys with similar experience. Id. In Hajjar-Nejad v. George Washington University, Arent Fox billed its client, George Washington University, discounted hourly rates ranging from $264 to $469, for a breach of contract case. No. 10-626 (CLL/JMF), 2013 WL 2635190, at *2 (D.D.C. June 12, 2013). In its fee request, the University only sought these discounted rates, and the D.C. District Court found these rates to be "reasonable and commensurate" with rates of attorneys having between one and 30 years' experience. Id.

Defendant shall reimburse Plaintiffs' counsel their hourly forum rates determined according to the USAO Matrix. Plaintiffs' rates shall be calculated based upon historic, not current, rates. Chiu v. United States, 948 F.2d 711, 719-22 (Fed. Cir. 1991) (finding that adjustments to fee rates after the date an attorney's services are rendered "constitutes an award for delay in receipt of fee reimbursement" and "contravenes the no-interest rule"); accord Biery, 818 F.3d at 714-15.

**Number of Reasonable Hours**

According to Plaintiffs' counsel's time sheets, counsel spent 3,855.1 hours on this litigation. Approximately 1,340.5 of these hours were spent on the issue of attorneys' fees, largely after settlement of the merits. See Pls.' Mot. Ex. 1; Pls.' Reply Ex. 1; Pls.' Notice Ex. 1. Defendant requests that the Court reduce Plaintiffs' total claimed hours by 50 percent, to account for the time spent exclusively on fee recovery. In addition, Defendant asks the Court to reduce specific time entries, claiming that Plaintiffs' counsel charged for noncompensable work, employed vague billing practices, and duplicated work performed in other, contemporaneous, Rails-to-Trails cases. As explained below, the Court agrees that a reduction is warranted, but not to the extent requested by Defendant.

### General Reduction in Plaintiffs' Overall Hours

Because Plaintiffs are seeking to recover fees for hours expended only on the issue of fee recovery, known as "fees on fees," Defendant requests that this Court reduce Plaintiffs' hours across the board by 50%. Although courts will usually grant some fees incurred in the preparation of attorneys' fees requests, the requested hours must be reasonable. See Gregory v. United States, 110 Fed. Cl. 400, 406 (2013); see generally Wagner v. Shinseki, 640 F.3d 1255, 1259 (Fed. Cir. 2011).

The instant fee dispute has been extremely contentious. In total, there are over a hundred docket entries between Plaintiffs' initial motion for fees on September 29, 2016, and the last docket entry on November 16, 2018. Since Plaintiffs filed their motion for fees, the parties have filed four substantive motions, as well as a number of motions for time extensions, 10 notices of additional authority, most of which included responses, and the Court has held four hearings and issued three orders. Given Defendant's aggressive litigation of this aspect of the case, Plaintiffs cannot be faulted for defending their fee request and responding to Defendant's filings. However, this Court finds the hours Plaintiffs spent on their fee application after settlement of the merits of this litigation, duplicative of work on three other rails-to-trails cases - - Biery v. United States, Campbell v. United States, and Whispell Foreign Cars, Inc. v. United States. The majority of Plaintiffs' 35-page fee application in this case is nearly identical to the applications filed in Biery, Campbell, and Whispell. Those cases did not, however, involve a dispute over which locality rate Plaintiffs' counsel should be awarded, as did later filings in this matter.

This Court recognizes that some courts have found that plaintiffs' counsel's fee award should not be disproportionately higher than the amount recovered by the individual landowners. See Whispell Foreign Cars v. United States, 139 Fed. Cl. 386, 396 (2018) (reducing number of hours awarded for work on fee request where fee award requested would have been more than double the amount recovered by the landowners); Campbell v. United States, 138 Fed. Cl. 65, 73 (2018) (finding the number of hours spent litigating the fee request to be "disproportionate to the result," therefore deducting hours "to bring the hours expended on the fee request closer in line with the relative simplicity of the case as litigated"); Biery, 2014 WL 12540517, at *4 ("[T]here is no basis for finding that the hours claimed for fees should exceed the hours spent on establishing liability in this court."). Here, due to the unusually contentious fee dispute prompted in large part by Defendant's tactical approach and the hours Plaintiffs' counsel were forced to expend litigating this aspect of the case, fees in excess of the amount recovered may be awarded.

As such, although it would be inappropriate to reduce all of Plaintiffs' claimed attorneys' fees by half based solely on Plaintiffs' efforts to recover their fees, the Court reduces the 214.9 hours spent on Plaintiffs' fee application by 50%, and awards reimbursement for 107.5 hours. Such a reduction takes into account the fact that work done in this case was duplicative of work performed in Biery, Campbell, and Whispell. See Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) (finding that redundant and excessive hours in a fee request are noncompensable).

Defendant further requests that this Court reduce the following fee categories by the following percentages:

| Fee Category[5] | Requested Reduction |
|---|---|
| Class Certification | 100% |
| Client Development | 100% |
| Attorney Travel | 50% |
| Vague Billing Entries | 50% |

---

[5]   Defendant challenges the same single billing entry on two, three, or in some cases, four different grounds. See generally Def.'s Opp'n Ex. 2. However, Defendant does not identify which portion of the hours in billing entries challenged on more than one category suffer from which alleged defect, making the Court's effort to review Defendant's position very difficult.

| | |
|---|---|
| Administrative Work | 100% |
| Block Billed Time | 25% |
| Unsuccessful Claims | 43% |

### Class Certification

Plaintiffs' counsel spent 54 hours on two unopposed motions for class certification and decertification from July 23, 2014, to March 23, 2016. Def.'s Opp'n 29; see also Def.'s Resp.; Order (Mar. 25, 2016). Plaintiffs' motion for certification was 25 pages long, and Plaintiffs' motion for decertification was included in Plaintiffs' motion for leave to file their fourth amended complaint. Defendant argues that Plaintiffs should not recover any of their claimed costs for class certification because this work was "wasteful and unnecessary." Def.'s Opp'n 29. The Court disagrees. It was reasonable for Plaintiffs' counsel to treat a Rails-to-Trails case initially involving over 200 properties and 66 plaintiffs as a candidate for a class action. The fact that such procedure ultimately became untenable as this litigation ran its course is not reason to deny fees. The 54 hours expended on class certification and decertification are reimbursable.

### Client Development

Defendant contends that Plaintiffs sought reimbursement for 329.3 hours that were devoted to client development. Defendant claims that 31.5 hours were exclusively spent on client development and that 297.8 hours included client development coupled with additional nonreimbursable activities, such as improper travel billing, administrative matters, and vague billing entries. "'Hours that are not properly billed to one's client, also are not properly billed to one's adversary pursuant to statutory authority.'" Hensley, 461 U.S. at 434 (quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)) (emphasis in original).

Defendant cites the following as examples of activities that constitute client development:

- Research and drafting memoranda

- Landowner meetings

- Team member meetings and strategy sessions

- Client correspondence

- Drafting the complaint

- Work on "expert issues"

- Drafting engagement letters

- Title searches

- Drafting subpoenas

- Compiling deeds and tax records

9

- Meetings with the mapping company
- Travel to and from meetings with the landowners.

Id. Ex. 2, at 132-43.

The tasks Defendant identifies as problematic are all directly related to this litigation and necessary for pursuing Plaintiffs' claims. As such, the Court grants reimbursement for the 31.5 hours Defendant challenges exclusively on grounds of client development. Defendant's challenge to the remaining 297.8 hours on the unsupported ground that these hours "include" client development activities is denied.

### Travel Time

Plaintiffs claim a total of 394.5 hours that reference travel time. Only 66.5 hours are solely attributable to travel time, as billing entries for the remaining 328 hours list both travel time and other activities. Defendant requests that this Court reduce Plaintiffs' counsel's hourly rates by 50% for billing entries that do not reflect case-related work performed simultaneously with travel. Def.'s Opp'n 32. Defendant's request is granted. Courts may reduce pure travel time by awarding a reduced rate of 50%. See Grantwood Vill., 55 Fed. Cl. at 486 (citing McMahon v. Novello, 192 F.Supp.2d 54, 70 (W.D.N.Y. 2001)). The reduced travel rate applies to both attorneys and paralegals. See Dotson v. City of Syracuse, No. 5:04-CV-1388 (NAM/ATB), 2014 WL 1764494, at *2 (N.D.N.Y. Apr. 30, 2014); Marston v. Sec'y of the Dep't of Health & Human Servs., No. 91-355V, 1998 WL 719493, at *4 (Fed. Cl. Spec. Mstr. Sept. 29, 1998). Consistent with this caselaw, the Court will compensate Plaintiffs' counsel's 66.5 hours spent solely on travel at 50% of each timekeeper's normal rate.

The Court in Grantwood Village explained that "utilizing the shortest time billed for travel" between counsel's location and the forum was appropriate to account for such travel time. Grantwood Vill., 55 Fed. Cl. at 486. Here, as in Grantwood Village, the Court will use the shortest travel time between St. Louis and Bedford, Indiana, five hours, to calculate the number of hours that should be billed at a discounted rate. Five hours represents both the time for a connecting flight between St. Louis, Missouri, and Louisville, Kentucky, the closest airport to Bedford, Indiana, and the time to drive from Louisville to Bedford.

Three hundred twenty-eight claimed hours include both travel and reimbursable work, such as preparing for and attending meetings with the landowners in Indiana, follow-up from client meetings, trail and property inspections, meeting with the appraiser, and preparing for and conducting depositions. When counsel combine nontravel related tasks and travel in a single billing entry, they should be reimbursed at their full hourly rates. Grantwood Village, 55 Fed. Cl. at 486; see also Greenwood, 131 Fed. Cl. at 242. This Court awards Plaintiffs' counsel their full rates for the 328 hours that include travel time as well as other work.

### Administrative Work

Defendant has identified 654.7 of Plaintiffs' counsel's claimed hours as including administrative work, and claims that 39.9 of these hours were devoted solely to administrative work. The Court of Federal Claims has held that "[t]asks such as proofreading, assembling, photocopying, and mailing have been considered non-compensable secretarial and administrative

10

work." Biery, 2014 WL 12540517, at *4 (citing Hopi Tribe v. United States, 55 Fed. Cl. 81, 99 (2002)). The Court agrees that 19.5 of these 39.9 hours constitute administrative work that should be reimbursed at a lower rate, as the pertinent billing entries reflect managing client data, preparing exhibits, preparing a case law database, and compiling documents for oral argument. Def.'s Opp'n Ex. 2, at 81-108. These 19.5 hours shall be reimbursed at paralegal rates. See Grantwood Village, 55 Fed. Cl. at 481. However, the Court finds that the remaining 20.4 hours that Defendant challenged as entailing only administrative work, reference team meetings, Plaintiffs' motions to strike and fee application, subpoena responses, expert work, and trial preparation. As such, these 20.4 hours shall be reimbursed at each timekeeper's regular rate.

Defendant argues that 614.8 hours reflected in billing entries such as compiling "plaintiff data from [Geographic Information System] mapping," drafting "follow-up letters," researching, drafting legal memoranda, conducting team meetings and strategy sessions, and reviewing pleadings are administrative in nature. Def.'s Opp'n Ex. 2, at 81-108. The Court disagrees. Given that this case involves properties whose boundaries must be defined to establish liability and damages, these tasks, including mapping, are legal in nature. Hopi Tribe, 55 Fed. Cl. at 99; see also Grantwood Village, 55 Fed. Cl. at 486 (reducing fees only on entries where time was spent exclusively on administrative tasks and not combined with compensable activities). Defendant contends that these hours, in addition to being administrative in nature, include other noncompensable activities such as class certification, improper travel billing, vague billing entries, unsuccessful claims, and client development, and were part of block billing entries. Def.'s Opp'n Ex. 2, at 81-108; Def.'s Not. Ex. 1, at 2-4. The record does not support Defendant's contention. The Court rejects Defendant's challenge to these 614.8 hours.

### Vague Billing Entries and Block-Billed Time

#### Alleged Vague Descriptions

Defendant claims that 746.2 hours in 546 billing entries are noncompensable because the descriptions of the work are vague. See Avgoustis v. Shinseki, 639 F.3d 1340, 1344-45 (Fed. Cir. 2011) (affirming Veterans Court's reduction of 2.5 hours out of 31.6 claimed hours in an Equal Access to Justice Act fee application based on vagueness). Defendant contests 59.1 hours solely on the basis of vagueness, and claims that the remaining 687.1 hours include other noncompensable activities, such as class certification, improper travel billing, administrative matters, and client development. Def.'s Opp'n Ex. 2, at 156-80; Def.'s Not. Ex. 1, at 2-4. Defendant has also challenged 355.9 hours in 51 of these 546 billing entries on the ground of block billing.

Billing entries must contain sufficient detail to permit this Court to effectively review the claimed fees. See Mich. v. U.S. Envtl. Prot. Agency, 254 F.3d 1087, 1093 (D.C. Cir. 2001) (stating that vague billing descriptions fail "to provide the court with any basis to determine with a high degree of certainty that the hours billed were reasonable, and thus cannot be charged to the taxpayers" (internal citation and quotation marks omitted)); see also Thomas v. United States, Nos. 10-54L, 10-459L, 2014 WL 1347221, at *4 (Fed. Cl. Apr. 4, 2014) (finding all of plaintiffs' vaguely worded entries noncompensable); Biery, 2014 WL 12540517, at *3 (reducing plaintiffs' vague and non-specific entries by 50%). Here, the following recurring vague entries lack sufficient detail to permit effective review:

11

- "Client correspondence,"
- "Work on expert issues,"
- "Research case,"
- "Strategize re: most efficient way to resolve case,"
- "Review pleadings,"
- "Work on mapping issues," and
- "Work on matters re: recovery of fees"

These recurring vague entries warrant a 50% reduction of the 390.3 hours Defendant challenged on grounds of vagueness and noncompensable activities other than block billing. Thus, the Court reimburses 195.2 hours challenged on these grounds.

### **Alleged Block Billing**

Defendant has also identified 205 billing entries representing 1,168.5[6] of Plaintiffs' counsel's hours as "block-billed," and requests a 25% reduction of these hours on that ground. See Def.'s Opp'n 35.  Defendant challenges 470.6 hours solely on grounds of block billing, and claims the remaining hours included other noncompensable activities, such as travel time, administrative work, client development, class certification, unsuccessful claims, and fees on fees. Def.'s Opp'n Ex. 1, at 109-29.

Block billing entails "lumping tasks together in time entries rather than making such entries task-by-task." McAfee v. Boczar, 738 F.3d 81, 90 (4th Cir. 2013); see Welch v. Met. Life Ins. Co., 480 F.3d 942, 945 n.2 (9th Cir. 2007) (Block billing is the time-keeping method by which each lawyer or legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks). Block billing poses the same difficulties as vague entries, in that it prevents the Court from determining whether the claimed hours are reasonable due to the lack of detail. See Preseault v. United States, 52 Fed. Cl. 667, 678 (2002) (disallowing $5,773.74 of plaintiffs' requested $1,312,407.90 in fees due to inadequate documentation in the billing records of one of plaintiffs' 10 counsel).

The United States Court of Appeals for the Federal Circuit has addressed the issue of block billing in patent cases, where courts award attorneys' fees in "exceptional" circumstances. Large Audience Display Sys., LLC v. Tennman Prods., LLC, 745 F. App'x 153, 158-59 (Fed. Cir. 2018); Raniere v. Microsoft Corp., 887 F.3d 1298, 1309 (Fed. Cir. 2018). In these cases, the Federal Circuit did not reduce the claimed hours, finding that the hours requested were not block-billed or were sufficiently described to permit judicial review. These cases are distinguishable, however, as the challenged billing entries either were not block-billed or contained work descriptions that provided sufficient detail for judicial review.

Other Courts of Appeals have varied widely in applying reductions for block billing. United States ex rel. Sant v. Biotronik, Inc., 716 F. App'x 590, 592-93 (Fed. Cir. 2017) (affirming trial court's decision to reduce 1,005.75 requested hours by 5% due to block billing); United States v. W. Radio Servs. Co., Inc., 671 F. App'x 460, 461 (9th Cir. 2016) (affirming trial court's reduction of 394.1 requested hours by 50% due to block billing); Hines v. City of Albany, 613 F. App'x 52, 55 (2d Cir. 2015) (finding that the trial court did not abuse its discretion in reducing

---

[6]    The Court calculates the number of hours in these billing entries as 1,110.5.

plaintiffs' 42.8 requested hours by 30% due to block billing); Neil v. Comm'r of Social Sec., 495 F. App'x 845, 847 (9th Cir. 2012) (affirming trial court's reduction of 28 requested hours by 10% due to block billing); BP Pipelines (N. Am.) Inc. v. C.D. Brown Constr., Inc., 473 F. App'x 818, 836 (10th Cir. 2012) (finding that trial court did not abuse its discretion in reducing claimed hours by 40% due to block billing); Green v. City of N.Y., 403 F. App'x 626, 630 (2d Cir. 2010) (finding that an "across-the-board reduction" of plaintiffs' requested 2,991.2 hours by 15% was not an abuse of discretion due to counsel's "pervasive" use of block billing" and vague billing entries); Lahiri v. Universal Music & Video Distribution Corp., 606 F.3d 1216, 1222-23 (9th Cir. 2010) (finding that the trial court did not abuse its discretion by imposing a 30% reduction of 80% of the claimed hours due to block billing); Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340 (1st Cir. 2008) (finding a 15% global reduction due to block billing to be reasonable).

Here, as Defendant pointed out, Plaintiffs' counsel's disputed block billing entries do not provide a sufficient level of detail to allow this Court to effectively review the reasonableness of the claimed hours. See, e.g., Def.'s Opp'n Ex. 1, at 109-29. At least four attorneys and three paralegals consistently employed block billing throughout this litigation. This Court reduces by 25% the 1,110.5 hours claimed in 205 of Plaintiffs' counsel's billing entries on grounds of block billing. The Court therefore deducts 277.6 hours, awarding Plaintiffs' counsel reimbursement for 832.9 hours Defendant attributed to block billing.

### Unsuccessful Claims

Defendant seeks a 43% reduction on the 56 hours Plaintiffs spent litigating ultimately unsuccessful claims, i.e. 102 claims that were voluntarily dismissed via stipulation. See Stip. (Mar. 23, 2016). Defendant argues that Plaintiffs have not met their burden in showing that the successful and unsuccessful claims shared common operative facts. The Court disagrees and finds the research performed on all properties, even that resulting in unsuccessful claims, was useful in the framing and ultimate resolution of the case. As counsel acted reasonably in zealously investigating those claims, the 56 hours expended on unsuccessful claims are reimbursable.

### Assessment of Reasonableness of Hours Reimbursed

This Court's decision on the reasonableness of Plaintiffs' claimed hours is informed by the Court's familiarity with the underlying litigation. At issue here was whether the Government effected takings of 117 properties owned by 66 Plaintiffs after issuing a Notice of Interim Trail Use to convert a 20.76-mile abandoned right-of-way into a public-access recreational trail. Plaintiffs' counsel had to "meet with each owner, review every appraisal report (and all of the substantiating work records such as comparable sales upon which the appraiser relied), meet with the appraiser, review each owner's chain of title and property surveys going back more than a century." Hearne Decl. ¶ 6 (Sept. 11, 2017). Plaintiffs' counsel reviewed over 10,000 pages of documents in preparation for a week-long trial. Id.

Plaintiffs filed a 28-page pretrial memorandum containing proposed findings of fact and conclusions of law, along with 1,094 pages of exhibits. Plaintiffs also filed five witness lists and four exhibit lists, as well as three motions in limine, three motions to strike, and a motion for discovery. Plaintiffs retained three experts to perform appraisals and testify as to property values, appraisal methods, the effect of rail-to-trail conversion on property values, and Geographic

Information System records, and listed three lay witnesses, landowners Jeffrey and Melissa Jo Lambrecht and Travis Thorne. Pls.' Ex. List 1-2.

Defendant did not file a pretrial memorandum. Months after the deadline set by this Court and only two-and-a-half weeks prior to trial, Defendant filed a motion in limine, two witness lists, and two exhibit lists. Defendant did not retain its own appraiser and agreed to the appraisal values provided by Plaintiffs' appraiser, Mr. Matthews. See Pls.' Memo. ¶ 56. Defendant listed two lay witnesses, the President of the Indiana Trails Fund and a representative of the Indiana Railroad Company. Def.'s Ex. List 2.

The parties and the Court traveled to Indiana to conduct trial at the United States District Court for the Southern District of Indiana in New Albany, Indiana, and a pre-trial site visit. This matter was memorable in that parties were about to embark on a site visit to a chicken farm and seven to nine other properties in near 100º weather when counsel advised the Court that they had reached a settlement. As a condition of settlement, the Government agreed to pay the landowners before the end of October 2016, but did not pay the landowners until January 2017, which required additional work by Plaintiffs' counsel and involvement of this Court. Tr. 26 (Dec. 21, 2016).

## Conclusion

Plaintiffs' motion for attorneys' fees and expenses is **GRANTED** in part. The Court awards Plaintiffs reimbursement for 2,821.9 hours of attorneys' fees as described above and adjusted in accordance with the USAO Matrix.[7]

Plaintiffs are awarded their requested costs in the amount of $232,994.

Plaintiffs shall submit a revised fee application to Defendant consistent with this opinion within 30 days, and Defendant shall promptly consider and process such request.[8]

The parties shall file a notice with the Court once the fees and costs have been paid.

    s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Senior Judge**

---

[7] This includes 412.8 hours billed between February 1, 2017, and September 10, 2017, to which Defendant has not objected.

[8] Plaintiffs identify Donna Mo as an attorney but do not provide her experience level. Plaintiffs also seek reimbursement for hours billed by Alexandra Levin as a "project assistant," and Eric Ngo as a "specialist," but do not indicate their billing categories or rates. Plaintiffs shall provide Defendant with this information forthwith.